UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

STACIA GREEN,

    Plaintiff,

v.

ELIZABETH HERTEL, et al.,

    Defendants.
_____/

Case No.  1:25-cv-00552

Hon.  Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

*Pro se* Plaintiff Stacia Green filed a civil complaint on May 12, 2025 against the following six Defendants: (1) Elizabeth Hertel, Director of the Michigan Department of Health and Human Services (MDHHS); (2) Stacie Sampson, Director of the Office of Inspector General (OIG); (3) Administrative Law Judge (ALJ) Steven Kibit; (4) OIG Investigator Marni Clay; (5) Assistant Attorney General (AAG) David Goodkin; and (6) MDHHS employee Jeffery Love.  (ECF No. 1.)

Plaintiff brings claims under 42 U.S.C. § 1983 alleging that Defendants violated her Fifth and Fourteenth Amendment rights.  (*Id.*, PageID.3.)

Plaintiff's claims derive from an overpayment dispute with the MDHHS.  For the reasons stated below, and pursuant to 28 U.S.C. § 1915(e)(2)(B), the undersigned respectfully recommends the Court dismiss Plaintiff's case.[1]

---

[1] The undersigned only considers Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and does not rule on Defendants' motion to dismiss.

1

## II.    Factual Allegations and Procedural History

Plaintiff Green's factual allegations are brief, spanning only about half a page. Her factual allegations are shown in their entirety below:

1. From May 2025 to December 2018, Plaintiff worked as an approved provider under Michigan's Medicaid Home Help Program. During this period, she lawfully earned wages and paid taxes on those earning.
2. In 2019, Defendant Jeffery Love, a DHHS employee, improperly demanded in-person ID verification from one of Plaintiff's workers, contrary to agency policy. When Plaintiff escalated the issue to the Director of the Home Help Program, Love retaliated by submitting a 'suspcious activity' report to the Office of Inspector General.
3. Based on that report, Defendant Marni Clay conducted an audit which resulted in the conclusion that Plaintiff had been overpaid by $12,480.17. No proper hearing or notice was given before the state withheld these funds from Plaintiff's wages.
4. Subsequently, Defendant Goodkin coerced Plaintiff into signing a repayment agreement under threat of continued wage seizure. Plaintiff signed the agreement under economic duress without access to legal representation.
5. When Plaintiff attempted to challenge the wage seizure, Defendant Steven Kibit, serving as Administrative Law Judge, failed to compel production of records, ignored Plaintiff's evidence, and upheld the agency findings without affording Plaintiff a fair hearing.

(*Id.*, PageID.2-3.)

And based on these factual allegations, Plaintiff asserts five counts, none of which names a specific Defendant.  The five counts are: (1) Fifth and Fourteenth Amendment violation of due process, (2) Fourteenth Amendment violation of equal protection, (3) Fifth and Fourteenth Amendment invalid waiver under duress, (4) Fifth Amendment vagueness in administrative regulations, and (5) Fifth Amendment violation of the takings clause.   (ECF No. 1, PageID.3-4.)

Plaintiff's complaint does not, however, tell the entire story of her dispute with

2

MDHHS. As reflected in a 2024 Michigan Court of Appeals decision, Green has litigated this matter before an Administrative Law Judge, in Circuit Courts in Kent and Ingham Counties (Michigan), in Michigan's Court of Claims, and in an appeal to the Michigan Court of Appeals.

The Court of Appeals of Michigan summarized the factual disputes and the procedural history of these cases as follows:

> Green is the owner of Royal Care Homecare, LLC, which provides home-based personal services to Medicaid beneficiaries. Both Green and Royal Care are enrolled Medicaid Providers. Between May 2015 and December 2018, they received $90,246.38 in Medicaid reimbursement payments from the Department. Subsequently, the Department initiated a post-payment review of the payments made to Green and Royal Care for the latter period. After receiving the requested documentation, the Department determined that Royal Care had been overpaid $13,826.91. Green contested responsibility in part. The Department reconsidered its initial findings and determined that Royal Care had been overpaid $13,153.53.
>
> Green requested a hearing before an administrative law judge (ALJ). After a hearing, the ALJ issued a proposed final decision (PFD) concluding that the Department's recoupment decision should be upheld. Green filed exceptions, but the Director of the Department adopted the PFD in its entirety and issued a Final Order upholding the recoupment demand.
>
> In April 2020, Green and Royal Care appealed the decision in the Kent Circuit Court. In March 2021, the Kent Circuit Court sent Green a notice of deficiency for failure to file her brief and perfect her appeal. Because Green failed to timely remedy the deficiency the court entered an order dismissing the appeal. Thereafter, the court denied Green's motion to re-open the case.
>
> Green filed two more petitions in the Kent Circuit Court seeking review of the Department's Final Order. The Department moved for dismissal on the basis that the circuit court lacked jurisdiction. The court agreed and dismissed Green's petitions. Green did not appeal that decision to this Court.

> Approximately seven months later, the Department filed suit against Green and Royal Care in Ingham Circuit Court to enforce the Final Order. The parties entered into a stipulation that Green and Royal Care would pay the Department $10,943.26 over a 24-month period. The Ingham Circuit Court entered the stipulation as a final order. Green, however, did not make any of the required payments and, three months later, moved to stay the execution of the stipulation. That motion was denied. Ultimately, the Department sought to satisfy the final order by offsetting Green and Royal Care's Medicaid payments.
>
> In August 2023, Green initiated a new action in the Court of Claims, naming the Department and the OIG as defendants. Defendants responded by moving for summary disposition, arguing that the Court of Claims lacked subject matter jurisdiction. They further contended that res judicata and collateral estoppel barred Green's claims, and that the parties' stipulation effectuated a waiver of her claims. The Court of Claims agreed and granted summary disposition to defendants. This appeal follows.

*Green v. Department of Health and Human Services*, No. 368269, 2024 WL 4834652, at *1 (Mich. Ct. App. Nov. 19, 2024).

The Court of Appeals then affirmed the Court of Claims' dismissal for lack of subject matter jurisdiction. *Id.*, at *3. The Court of Appeals explained:

> Neither Green nor defendants assert that a statutory provision for appellate review specific to the Department's audit procedures exists. Consequently, Green's avenues for judicial review of the Department's Final Order are limited to either the APA or MCL 600.631. The APA's procedure for obtaining review of an agency decision provides that "a petition for review shall be filed in the circuit court for the county where petitioner resides or has his or her principal place of business in this state, or in the circuit court for Ingham county." MCL 24.303. The APA predicates the availability of this judicial review on the appellant's being "aggrieved by a final decision or order in a contested case," and having exhausted all administrative remedies available within the agency. MCL 24.301. The APA defines "contested case" as "a proceeding ... in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3). Likewise, under MCL 600.631:

4

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, *to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county*, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court. [Emphasis added.]

Here, it is undisputed that the proceedings before the Department qualified as a contested case. Thus, an appeal to *the circuit court in either the county where Green resides or Ingham County* was available to Green under the APA or under MCL 600.631. In contrast, no law expressly authorizes review of Green's appeal of the Department's Final Order before the Court of Claims. Accordingly, we conclude that the Court of Claims correctly dismissed Green's complaint for lack of subject-matter jurisdiction.

*Id.*, at *3.

Nearly six months after the Court of Appeal's decision, Plaintiff brought the instant federal action. (ECF No. 1.) On May 15, 2025, The Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.)

### III. Standard of Law

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In addition, the Court must read Plaintiff's *pro se* complaint indulgently, see *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

### IV. Analysis

#### A. Jurisdiction

Plaintiff presents her factual assertions as Section 1983 constitutional claims. However, a comparison of the claims Green makes in this case with the summary provided by the Michigan Court of Appeals demonstrates that Green is simply challenging the proceedings and decisions of the Michigan courts. The Court of Appeals opinion indicates (1) that Green disputed MDHHS's determination that she had been overpaid, (2) that Green obtained a hearing before an ALJ on the overpayment issue, (3) that Green then sought review of the ALJ's decision

(effectively also the MDHHS's decision) in the Circuit Court for Kent County on multiple occasions, and (4) that the Kent County Circuit Court ultimately dismissed Green's appeal for lack of jurisdiction. *Green*, 2024 WL 4834652 at *1.

About seven months later, the MDHHS brought suit, in the Circuit Court for Ingham County, against Green to enforce the MDHHS's final order. *Id.* Then, in August 2023, Green filed suit in Michigan's Court of Claims. That court determined that it also lacked subject matter jurisdiction and, alternatively, that Green's claims were barred by the preclusion doctrines of *res judicata* and collateral estoppel. *Id.*

The instant lawsuit in this Court is a continuation of this long legal dispute. Effectively, Green is re-packaging her disputes with MDHHS as federal claims. Here, Green may be attempting to appeal the Michigan Court of Appeals decision, or she may be attempting to re-litigate the entire matter in federal court. The undersigned concludes that Green is barred by the *Rooker-Feldman* doctrine and by the doctrine of *res judicata*. As the Court of Appeals of Michigan explained, the appropriate forum for Green's case is "an appeal to *the circuit court in either the county where Green resides or Ingham County*." *Green*, 2024 WL 4834652, at *1 (italics in original).

First, Green's claims are barred by the *Rooker-Feldman* doctrine.

> The *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

7

Federal causes of action that amount to attacks on a final judgment of a state court fall within the *Rooker-Feldman* bar. *See Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 461 (6th Cir. 2003) (noting that attacks on the state court's order compelling arbitration called into question the state court's arbitration decision, and, accordingly, was inextricably intertwined with the federal claims in the case, within the meaning of *Rooker–Feldman*'s bar).

Here, Green's case is an attack on multiple aspects of her litigation in various state courts. Accordingly, her federal case is barred by *Rooker-Feldman*.

In addition, Green's federal claims are barred by the doctrine of *res judicata*. The doctrine of *res judicata*, also called claim preclusion, states that a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). *Res judicata* applies when: (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Moitie*, 452 U.S. at 398.

Furthermore, *res judicata* bars all claims that were or could have been advanced in support of the plaintiff's cause, not merely those that were adjudicated. *Ocean Drilling & Exploration Company, Inc. v. Mont Boat Rental Services*, 799 F.2d 213, 217 (5th Cir.1986); *Jennings v. Caddo Parish School Board*, 531 F.2d 1331 (5th Cir.1976). The doctrine dictates that there be an end to litigation. A party may not

"overcome the bar posed by *res judicata* merely by rebranding his legal theory or by providing additional evidence" for previously unsuccessful claims. *Perkins v. Trek Bicycle Corp.*, No. 1:24-cv-25, at 3 (6th Cir. Sept. 3, 2025). It is direct review by appeal, not the filing of new complaints concerning the same issues, that corrects any erroneous conclusions a court might make. *Equitable Trust Company v. Commodity Futures Trading Commission*, 669 F.2d 269 (5th Cir.1982).

Here, Green is rebranding the same issues litigated in Michigan courts in her federal complaint. Rather than returning to Ingham County Circuit Court, Green is attempting to bring her disputes regarding the MDHHS re-payment plan as constitutional claims. The Ingham County Circuit Court, Kent County Circuit Court, Michigan Court of Claims, and the Michigan Court of Appeals have already considered these issues. The doctrine of *res judicata* bars Green from relitigating the same claims against MDHHS in federal court.

Therefore, this Court lacks jurisdiction to hear Plaintiff's claims under either the *Rooker-Feldman* doctrine or the doctrine of *res judicata*.

### B. Statute of Limitations

Even if the Court had jurisdiction to hear Plaintiff's federal claims, four of the five claims she asserts are barred by the statute of limitations.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268 69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. MICH. COMP. LAWS § 600.5805(10); *Carroll v.*

*Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.

Here, Count I, II, IV, and V of Plaintiff's Complaint are untimely. In her complaint, Plaintiff asserts claims arising between 2015 and 2019. (ECF No. 1, PageIDs.2-3.) Plaintiff knew of the alleged harms at the time they occurred. However, she did not file her complaint until May 12, 2025. (*Id.*).

Further, the undersigned engages in the following analysis of the continuing violation doctrine and concludes that the doctrine does not apply here. The Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). The Sixth Circuit has identified two categories of continuing violations. First, "where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes disparate work assignments or gives unequal pay for equal work." *Burzynski v, Cohen,* 264 F.3d 611, 618 (6th Cir. 2001) (internal quotations and citations omitted.) Alternatively, "where there has occurred a long-standing and demonstrable policy of discrimination." *Id.*

10

In *Broom v. Strickland*, the Sixth Circuit refused to apply the continuing-violations doctrine to claims against Ohio's lethal-injection protocol. *Broom v. Strickland*, 579 F.3d 553, 555-56 (6th Cir. 2009). There, applying a slightly different formulation, the Court explained:

> "[A] 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus,* 557 F.3d 693, 697 (6th Cir.2009) (citations omitted). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 635 (6th Cir.2007) (internal quotation marks and alteration omitted). Broom has not alleged "continual unlawful acts," but rather challenges the effects from the adoption of the lethal-injection protocol. In essence, he has presented no continued wrongful conduct, only the continued risk of future harm. *See Walker v. Epps,* 550 F.3d 407, 417 (5th Cir.2008) ("The challenged protocol will affect each plaintiff but once. Under these circumstances, the protocol does not constitute a continuing tort."). Furthermore, Broom has not explained how his claim of a continuing violation would not conflict with the conclusion of the panel in *Cooey II* as to when the injury accrued. *See Cooey II,* 479 F.3d at 421 (implicitly rejecting the application of the doctrine when the only continued harm alleged is the continued existence of the protocol).

*Id.*

Here, the continuing violation doctrine does not apply. Plaintiff's complaint does not assert a "continuing unlawful act," but rather challenges the enforcement of a repayment plan she signed. Plaintiff also does not raise any evidence of present discriminatory activity in her complaint. Additionally, Plaintiff does not allege a long-standing policy of discrimination against any class of which Plaintiff is a member of. As such, there is no continuing violation.

Four of Plaintiff's claims date back to 2019 or earlier. (ECF No. 1, PageID.2.) These factual allegations took place nearly six years ago. Therefore, in the opinion of the undersigned, Counts I, II, IV, and V in Plaintiff's Complaint are barred by the three-year statute of limitations. Only Count III against Defendant Goodkin, arising from events in October 2022, is not barred by the three-year statute of limitations.

### C. Count III

Plaintiff's sole count not barred by the statute of limitations fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Count III of Plaintiff's complaint asserts the following:

> 3. <u>Count III: Invalid Waiver Under Duress (Fifth and Fourteenth Amendments)</u>
> Plaintiff was coerced into signing a repayment agreement under economic duress and threat of continued wage seizure. Such waiver was neither knowing, voluntary, nor intelligent, and violates Plaintiff's constitutional protections against compelled forfeiture of rights.

(ECF No. 1, PageID.4.)

The Fifth Amendment applies only to violations of due process by the federal government, not state agencies or state employees. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 n.3 (6th Cir. 2007). Count III in Plaintiff's complaint relates to alleged actions by Defendant Goodkin, the Michigan Assistant Attorney General representing MDHHS. The Fifth Amendment does not apply to alleged due process violations by a state of Michigan employee.

Plaintiff also asserts a Fourteenth Amendment violation in Count III of her

complaint. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (citation omitted.)

Here, the facts are conclusory regarding the Fourteenth Amendment claim. *See Chapman v. Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings.")

Plaintiff has already utilized multiple avenues of due process. First, an Administrative Law Judge heard Plaintiff's claims and upheld the MDHHS's recoupment decision. *Green*, 2024 WL 4834652, at *1. Next, Plaintiff alleges that she signed a repayment agreement "under economic duress without access to legal representation." (ECF No. 1, PageID.3.) As ordered by the Ingham County Circuit Court, Plaintiff entered a stipulation to repay MDHHS across twenty-four monthly payments. *Green*, 2024 WL 4834652, at *1.

In the opinion of the undersigned, Plaintiff has failed to state a Fifth or Fourteenth Amendment claim for which relief may be granted. Accordingly, the

13

undersigned respectfully recommends that the Court dismiss Plaintiff's Fifth and Fourteenth Amendment claims (Count III) against Defendant Goodkin.

## IV. Recommendation

Therefore, the undersigned respectfully recommends that the Court dismiss the complaint because this Court lacks jurisdiction to consider Plaintiff's claims. Alternatively, the undersigned respectfully recommends that the Court dismiss the complaint because all of Plaintiff's federal claims are either barred by the statute of limitations or fail to state a claim for which relief may be granted.

Dated:   September 30, 2025                    /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U.S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).